**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBRA SCANDONE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | NO. 05-4833 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM ON REQUEST FOR REVIEW**

Baylson, J.                                                                    August 18, 2011

Plaintiff Debra Scandone ("Scandone") requests judicial review of the final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying her

application for disability insurance benefits ("DIB") and supplemental security income ("SSI")

pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-

1383(c).  (Compl., ECF No. 1.)  Pending before the Court are Scandone's Complaint and her

Brief and Statement of Issues in Support of Request for Review (Pl.'s Br., ECF No. 20), the

Commissioner's response thereto (Resp., ECF No. 23), and Scandone's Reply (Reply, ECF No.

24).  After careful and independent consideration of the matter, and for the following reasons, the

Court will **deny** Scandone's request for review.

---

[1]      On February 12, 2007, Michael J. Astrue became the Commissioner of Social
Security.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted
for former Commissioner Jo Anne B. Barnhart as the defendant in this suit.

I.      **Factual and Procedural Background**

The history of this matter is lengthy and complicated, spanning more than fifteen years. Three different ALJs have issued five different decisions on Scandone's two applications for benefits.  The Appeals Council vacated the first of these decisions, Judge Brody and the undersigned remanded the next three decisions, and the fifth decision is the subject of this Memorandum.  The three ALJs, together with a fourth, also combined to hold four hearings and the two-volume administrative record spans more than 1100 pages.

Scandone filed her first application for DIB and SSI on July 31, 1996.  (A.R. 703.)  She claimed a disability onset date of May 1, 1994, at which time she was forty years old.  (Id.)  She filed her second application for DIB and SSI on July 10, 2011.  (Id. 198.)  She claimed a subsequent onset date of September 10, 2000, at which time she was forty-seven years old.  (Id.)  Scandone has prior relevant work experience as an office manager, retail sales clerk, and receptionist.  (Id. 18.)  She graduated from college with a bachelor's degree in fine arts.  (Id. 612.)  Scandone claims disability due to syringomyelia, fibromyalgia, interstitial cystitis, chronic fatigue, and depression.  (Id. 231, 712.)

Scandone claims two periods of disability: May 1, 1994 through September 1998, and September 10, 2001 to the present.  (Id. 609-10; Pl.'s Br. at 1.)  ALJ Moskal, whose June 2007 decision is the subject of this review, determined Scandone has been disabled since July 18, 2003, but not before.  (A.R. 20.)  Accordingly, the Court must determine whether substantial evidence supports the conclusion that Scandone was not disabled from May 1, 1994 through September 1998, and again from September 10, 2001 through July 17, 2003.

A brief recap of the numerous decisions in this case will set the stage for the Court's task.

In June 1998, ALJ Garrety concluded Scandone was not disabled because, despite impairments due to cystitis, fibromyalgia, and reactive depression, she remained capable of performing unskilled light work with minimum levels of occupational stress and access to bathrooms.  (Id. 663.)  ALJ Garrety denied Scandone's original application for benefits because, although she could not perform her past relevant work with these limitations, she was capable of performing jobs available in significant numbers in the economy.  (Id. 667.)  The Appeals Council vacated this decision in September 2000 for failure to consider whether Scandone's depression met the regulatory listing criteria.  (Id. 672-74.)

On remand from the Appeals Council, ALJ Garrety issued her second decision in August 2001.  ALJ Garrety again limited Scandone to light work, which does not require lifting more than twenty pounds, exposure to more than low stress, or performance of more than simple one to two step tasks.  (Id. 651.)  She also required a work station in proximity to the restroom.  (Id.)  The Appeals Council approved this decision, but on request for review to the this Court, Judge Brody found the decision lacking in several respects.  See Scandone v. Barnhart, No. 02-2892, 2003 WL 22797732 (E.D. Pa. Nov. 17, 2003).  Judge Brody found no error in ALJ Garrety's impairment listing analysis; her rejection of the opinions of Dr. Herring and Dr. Whalen; or her rejection of Scandone's claimed limitations because they conflicted with her daily activities and subsequent employment record.  Id. at *1-3, 4.  Judge Brody also found no error in the ALJ's failure to resolve a conflict between the vocational expert ("VE") and Dictionary of Occupational Titles because no one raised the conflict at the hearing.  Id. at *3-4.  Judge Brody nevertheless remanded to the ALJ to consider two issues: first, the ALJ's discussion of the opinion of Dr. L.

Robert Griffin was insufficient[2]; second, the ALJ failed to discuss the weight attributable to the testimony of Scandone's friend, Blaine Packer.  Id. at *2-3, 4.

During this time, Scandone's second application for benefits was also pending review. The Commissioner initially denied her claim on December 17, 2001.  (A.R. 112.)  Scandone requested a hearing before an ALJ (id. 116), and ALJ Strauss denied her claim in an October 31, 2002 decision (id. 43-53).  In her decision, ALJ Strauss concluded Scandone's alleged mental limitations were not severe, and any lapses were attributable to her pain not her depression.  (Id. 51.)  Further, she concluded Scandone's complaints were only partially credible because many of her complaints were ameliorated by dental repairs.  (Id.)  Nevertheless, ALJ Strauss decided to limit Scandone to light and sedentary work, but not highly skilled or detailed work.  (Id. 51-52.) Instead, she could only perform semi-skilled and unskilled work.  (Id. 52.)  Despite these restrictions, ALJ Strauss concluded Scandone could still perform her relevant past work as a retail sales clerk, receptionist, and administrative clerk.  (Id. 53.)  Accordingly, she was not disabled as of September 2000.  (Id.)

The Appeals Council approved the decision (id. 173-75), but on request for review to the this Court, Judge Brody again found several errors in the decision and remanded to the Commissioner (id. 24).  This time, Judge Brody adopted and approved Magistrate Judge Welsh's report and recommendation which thoroughly reviewed ALJ Strauss's decision.  (Id. 54; see id.

---

[2]     ALJ Garrety discredited Dr. Griffin's report for three reasons: Scandone was not attending formal mental health treatment, two months after the report she was in a full-time sales position, and Scandone was engaged in a wide range of social and daily living activities. According to Judge Brody, attending formal treatment sessions should not be a prerequisite to obtaining benefits for mental disabilities, Scandone's sales position was not always full-time, and her activities were limited and might not undermine her ability to work.  2003 WL 22797732, at *2-3 & n.3.

55-71.)  Judge Welsh found several errors in ALJ Strauss's decision: she failed to consider the

Daily Activities Questionnaire submitted by Scandone's friend, Virginia Greenwood, which

corroborates Scandone's credibility; she failed to consider whether Dr. Christos Eleftherios's

finding of "fair" mental functioning established a severe impairment; and she failed to consider

corresponding mental limitations in her RFC assessment because of the latter error.  (Id. 61-64,

68-70.)  Judge Welsh took no exception to the other issues raised in Scandone's request for

review.  (See id. 60-61, 64-68.)

The Appeals Council decided to consolidate Scandone's two applications for purposes of

re-hearing in front of an ALJ.  Thus, after two remands from the Eastern District, the assigned

ALJ would consider the five issues raised in the two decisions: (1) the opinion of Dr. Griffin; (2)

the testimony of Blaine Packer; (3) Virginia Greenwood's Daily Activities Questionnaire; (4)

whether Scandone has a severe mental impairment pursuant to Dr. Eleftherios's findings; and (5)

Scandone's capacity to understand and execute instructions and to respond appropriately to

supervision, co-workers, and work pressure.

Judge Strauss issued another decision on June 18, 2005, which was partially in

Scandone's favor.  (Id. 75-86.)  ALJ Strauss concluded Scandone was disabled as of April 1,

2004, but not before.  (Id. 85.)  Scandone again requested review by this Court.  (Compl.)  The

undersigned remanded this matter pursuant to the Commissioner's request because the SSA was

unable to locate the tape of the hearing preceding the June 2005 decision.  (Mem., ECF No. 12 at

1.)  Without the tape, the Commissioner could not complete the administrative record.[3]  (See id.)

---

[3]      It does not escape the Court that the administrative record now contains a
transcript of the March 31, 2005, despite the Commissioner's previous alleged inability to locate
the tape.  (A.R. 552-77.)  The Court is cognizant that the allegedly misplaced tape has delayed

The undersigned "remanded to the Commissioner for further administrative proceedings, but the determination that [Scandone] has been disabled since April 1, 2004 [was not] subject to <u>de novo</u> adjudication." (<u>Id.</u> at 5.)

On remand once more, ALJ Newberger held an abbreviated hearing in April 2007 (A.R. 578-606), but then ALJ Moskal took over the case and held yet another hearing in Philadelphia, Pennsylvania on June 7, 2007 (<u>id.</u> 607-28). Scandone testified that she gets "increasingly worn down, like more fatigued, more pain, more mental fog, and [she] start[s] to fail" at her jobs. (<u>Id.</u> 615.) Scandone also explained that she pursued employment when forced to do so, either after a divorce or because her church believed she was able to work. (<u>See id.</u> 613, 618-19, 621.)

The vocational expert ("VE") then testified and identified Scandone's past relevant work as office manager, sales clerk, and receptionist. (<u>Id.</u> 624.) Office manager is sedentary, skilled work; sales clerk is light, semi-skilled work; and receptionist is sedentary, semi-skilled work. (<u>Id.</u>) The VE testified that if limited to sedentary, unskilled work, with no public contact, Scandone would be able to perform jobs in the regional and national economy, such as assembler of optical goods, table worker, and masker. (<u>Id.</u> 626-27.) Scandone's attorney did not modify the hypothetical or ask the VE any other questions. (<u>Id.</u> 627.)

On June 23, 2007, ALJ Moskal issued her decision denying Scandone's claim for

---

resolution in this matter an additional <u>five</u> years. Scandone, however, is not without fault for the delays. In her opening brief, her counsel admits he advised the Commissioner, in September 2008, that the initial administrative record was not complete. He did not follow up again until August 2009, and again until April 2011 when he moved to compel the filing. (Pl.'s Br. at 28; <u>see</u> Mot. to Compel, ECF No. 17.) Although it is undisputed and inexcusable that the Commissioner failed to complete the administrative record within a reasonable time, Plaintiff did wait almost three years to move to compel. However, this circumstance does not affect the merits.

benefits.  (Id. 8-20.)  ALJ Moskal concluded that Scandone was disabled as of July 18, 2003, but not before because she was capable of performing sedentary, unskilled work with no public contact despite her physical and mental limitations.  (Id. 10.)  ALJ Moskal began her analysis by considering the five issues raised in the two prior District Court decisions.  She found Dr. Griffin's report was not entitled to significant weight because he conducted one examination, had no treating relationship with Scandone, did not review objective medical records or Scandone's work history, and his findings were undermined by the fact that Scandone engaged in gainful employment within months of the report.  (Id. 12-13.)

As for the lay witness evidence, ALJ Moskal found Packer's testimony inconsistent with Greenwood's Questionnaire and in conflict with the fact that Scandone worked during some of time period about which Packer testified.  (Id. 13-14.)  She also found Greenwood's Questionnaire not entitled to significant weight with regard to Scandone's claim of depression because it was inconsistent with the medical record of the same period.  (Id. 14.)  ALJ Moskal also opined that Greenwood might have exaggerated her responses in favor of her friend.  (Id.)

ALJ Moskal then accepted that Dr. Eleftherios's opinion establishes a severe mental impairment, but that his findings nonetheless reveal Scandone can engage in unskilled work that requires simple one to two step tasks and does not require contact with the public.  (Id. 14-15.)  Finally, she concluded, based on the entire record, including prior hearings, Scandone can understand, remember, and execute short, simple instructions required for unskilled work, but without contact with the public.  (Id. 15.)

Based on a review of the record, and after considering the issues raised in the District Court decisions, ALJ Moskal concluded Scandone suffers from several severe impairments:

-7-

fibromyalgia, cystitis, chronic fatigue, and depression.  (Id.)  But these impairments, individually

and in combination, do not meet or medically equal the listed impairments.  (See id. 15-16.)

Although Scandone is somewhat limited in her functional capacity because of these impairments,

ALJ Moskal concluded that her "statements concerning the intensity, persistence and limiting

effects of [her] symptoms are not entirely credible."  (Id. 17.)  ALJ Moskal noted she relied on

the evidence of record, and considered all of Scandone's claimed symptoms (id. 16-17), but she

reached her ultimate conclusion primarily based on Scandone's employment history (see id. 17).

ALJ Moskal determined that Scandone is able to work when she is economically required to do

so, but that she is limited to sedentary, unskilled work with no public contact.  (Id.)

 In light of these limitations, Scandone is not able to perform past relevant work and "prior

to July 18, 2003, [Scandone] was capable of making a successful adjustment to work that existed

in significant numbers in the national economy.  A finding of 'not disabled' is therefore

appropriate."  (Id. 18-19.)  As of July 18, 2003, Scandone's age category changed.  (Id.)

Considering the change in her age category, education, work experience, and RFC, a finding of

"disabled" is appropriate under the regulations.  (Id. 19.)

 Mercifully, the Commissioner located the tape for ALJ Moskal's hearing and eventually

completed the administrative record in April 2011.  (ECF No. 18.)  The matter is now ripe for

disposition.

## II. Jurisdiction and Standard of Review

### A. Jurisdiction

 This Court has jurisdiction to review the Commissioner's final decision pursuant to 42

U.S.C. § 405(g).  See 42 U.S.C. § 405(g) ("Any individual, after any final decision of the

Commissioner . . . made after a hearing to which [s]he was a party . . . may obtain review of such decision by a civil action commenced within sixty days after the mailing to h[er] of notice of such decision . . . .").  Venue is proper in this Court pursuant to § 405(g).

### B.    Standard of Review

District courts may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the matter for rehearing.  42 U.S.C. § 405(g).  This Court's role in reviewing the ALJ's decision is to determine whether there is substantial evidence to support the Commissioner's decision.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); see also Jones, 364 F.3d at 503 (stating that substantial evidence is less than a preponderance of the evidence but more than a scintilla).  To determine whether substantial evidence exists, the Court reviews the record as a whole.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  Nevertheless, the Court retains plenary review of all legal issues.  Id.

## III.   Discussion

### A.    Legal Standards

Social security benefits may be paid to persons "under a disability."  42 U.S.C. § 423(a)(1).  To establish a disability, a claimant "must demonstrate some medically determinable basis for an impairment that prevents h[er] from engaging in any substantial gainful activity for a statutory twelve-month period."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d

Cir. 2000) (quotation marks omitted).  "A person is disabled 'only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'"  Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469 (3d Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(A)).

When assessing whether an individual has a disability under the Act, the ALJ follows the following five-step sequential analysis: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. § 404, subpart P, appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet the previous prong, the Commissioner considers the claimant's residual functional capacity to determine whether she can perform any past relevant work – if she can, the claimant will be found not disabled; and (5) if the claimant cannot perform any of his or her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and past work experience to determine whether she can perform other work which exists in the national economy.  Schaudeck, 181 F.3d at 431-32; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

The claimant bears the burden of proof for steps one, two, and four and the burden shifts to the Commissioner for the fifth step – no party bears the burden for step three.  Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262 (3d Cir. 2006).  Furthermore, if at any step the Commissioner finds the claimant is disabled or not disabled, the inquiry is at an end.  Kinney,

244 F. App'x at 469 (citing 20 C.F.R. § 404.1520(a)(4)).  ALJ Moskal denied Scandone's claim

at the fifth step, concluding that "prior to July 18, 2003, [Scandone] was capable of making a

successful adjustment to work that existed in significant numbers in the national economy."

(A.R. 19.)

> In evaluating a claim for benefits, the ALJ must consider all of the evidence in the case.  The ALJ must "explicitly" weigh all relevant, probative, and available evidence.  Moreover, the ALJ must provide some explanation for a rejection of probative evidence that would suggest a contrary disposition.  Although the ALJ may properly accept some parts of the medical evidence and reject other parts, the ALJ must still consider all the evidence and give some reason for discounting the evidence [s]he rejects.  In the absence of such an indication, the reviewing court cannot determine whether significant probative evidence was deemed not credible or whether it was simply ignored.

Weber v. Massanari, 156 F. Supp. 2d 475, 483 (E.D. Pa. 2001) (citations omitted).  Further,

when there is a conflict in the evidence, the ALJ is entitled to decide which evidence to credit,

but "cannot reject evidence for no reason or the wrong reason."  See Mason v. Shalala, 994 F.2d

1058, 1066 (3d Cir. 1993).  "[T]he ALJ must indicate in h[er] decision which evidence [s]he has

rejected and which [s]he is relying on as the basis for h[er] finding.  This explanation provides

[the Court] with a basis on which to assess whether significant probative evidence was not

credited or was simply ignored."  Schaudeck, 181 F.3d at 433 (citations, quotation marks, and

alteration omitted).

## B.    Parties' Contentions

Scandone contends the ALJ made three errors in her decision.  First, she argues the ALJ

erred in rejecting the opinion of Dr. Griffin because much of the ALJ's analysis is irrelevant and

offers no explanation for the ALJ's treatment of the opinion.  Further, Scandone criticizes the

ALJ's reason for discrediting the opinion.  Second, Scandone contends the ALJ improperly

rejected Parker's testimony and Greenwood's Questionnaire. Finally, she asserts the ALJ offered a deficient residual functional capacity ("RFC") analysis, failing to adequately explain her rejection of evidence and her credibility determinations, and also failing to include a limitation for an acknowledged severe impairment. Scandone then requests the Court award her DIB and SSI benefits for the periods in dispute, arguing substantial evidence supports a finding of "disability" and the Commissioner is responsible for most of the delays throughout the fifteen-year saga of this case.

In response, the Commissioner argues substantial evidence supports the ALJ's decision. The Commissioner contends Dr. Griffin's opinion conflicts with other evidence in the record; the lay witnesses' testimony and submission conflict with other evidence in the record; and the ALJ adequately explained the physical and mental limitations that constitute the RFC assessment. As for Scandone's request for an award of benefits, the Commissioner contends the record does not support a finding of disability and that there is no deadline to finally decide an application for benefits.

In reply, Scandone argues that the Commissioner improperly offers post hoc justifications for the ALJ's decision and otherwise does not respond to the arguments in her Opening Brief.

### C.    Analysis

#### 1.    Rejection of Dr. Griffin's Opinion

ALJ Moskal accorded little weight to Dr. Griffin's opinion for several reasons: (1) it resulted from one examination; (2) there was no ongoing treatment relationship; (3) he did not rely on any of Scandone's objective medical records or work history; and (4) within months of the report, Scandone was engaged in semi-skilled work, which undermines Dr. Griffin's findings.

Scandone contends many of these factors only effect the weight of the opinion and do not justify outright rejection.  Further, she argues the ALJ failed to consider that her impairments may wax and wane over time, such that she was disabled prior to and after her period of work between 1998 and 2001.  The Commissioner argues the ALJ reasonably declined to give Dr. Griffin's opinion significant weight because it conflicts with other evidence in the record.

     In evaluating a disability claim, the ALJ must determine what weight to give the opinions of treating, non-treating, and non-examining sources by considering several factors.  Solter v. Comm'r of Soc. Sec. Admin., No. 09-2821, 2010 WL 3620213, at *7 (E.D. Pa. Aug. 6, 2010); see 20 C.F.R. §§ 404.1527(d), 416.927(d).  A non-treating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant.  20 C.F.R. §§ 404.1502, 416.902.  Opinions from non-treating sources do not carry as much weight as treating source opinions, but are generally entitled to more weight than non-examining sources.  See Solter, 2010 WL 3620213, at *7.

     In determining the weight, if any, to accord the opinion of a non-treating source, the ALJ considers: (1) the nature of the examining relationship; (2) the nature of the treating relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the source offering the opinion.  Irelan v. Barnhart, 82 F. App'x 66, 71 (3d Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).  The ALJ may not reject a physician's findings unless she first weighs the findings against other relevant evidence and explains why certain evidence has been accepted and other evidence rejected.  Mason, 994 F.2d at 1067.  This

Court considers whether substantial evidence supports the ALJ's treatment of Dr. Griffin's opinion.  See Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).

Substantial evidence supports the ALJ's decision in this case to "not give Dr. Griffin's findings significant evidentiary weight."[4]  (A.R. 13.)  Dr. Griffin performed several psychological and cognitive evaluations of Scandone, finding that she has limitations in concentration and attention.  (Id. 936.)  He also opined that her testing levels are lower compared to her "probable superior function before her present illness."  (Id.)  Further, her anxiety is sufficiently strong that it is impairing her basic ability to function (id.), and she is overwhelmingly anxious to the point that her basic functioning in all areas is impaired (id. 941).  Dr. Griffin also completed a questionnaire in which he indicated Scandone suffers from "marked" restrictions in activities of daily living and social functioning and also has deficiencies in concentration, persistence, or pace.  (Id. 942, 943.)

As the ALJ correctly notes, Dr. Griffin's opinion resulted from a one-time examination and was not and has not been part of an ongoing treatment relationship.  See Irelan, 82 F. App'x at 71.  Further, Dr. Griffin's opinion relies almost entirely on Scandone's self-reports and tests conducted during the examination – there is no review of medical records or documents regarding her employment history.  See id.  Finally, within five months of Dr. Griffin's opinion, Scandone returned to the workforce for approximately three years, which suggests that Scandone was not as limited in her ability to function as Dr. Griffin opined.  (E.g., A.R. 618-19.)  This implies the opinion is not consistent with the record as a whole.  See Irelan, 82 F. App'x at 71.

---

[4]     Contrary to Scandone's argument, ALJ Moskal did not outright reject Dr. Griffin's opinion; rather, she decided not to give the opinion "significant evidentiary weight."

Scandone's argument reflects disagreement with the ALJ's treatment of Dr. Griffin's opinion, but does not suggest a lack of substantial evidence to support the ALJ's treatment of the opinion.  The Court concludes substantial evidence exists to support the ALJ's decision to not give the opinion significant evidentiary weight.

### 2.        Rejection of Parker Testimony and Greenwood Questionnaire

Scandone argues that ALJ Moskal did not sufficiently explain why she rejected the testimony of Blaine Packer, her friend who testified at the January 2001 hearing about the extent of her limitations.  Further, she contends the ALJ's reasoning is inconsistent because the ALJ relied on evidence she found not credible to justify finding Packer's testimony not credible. Finally, the ALJ inappropriately relied on Packer's failure to testify regarding certain facts, even though he was never asked any questions regarding those facts.  As for Greenwood, Scandone suggests the responses support her claimed limitations.  In response, the Commissioner argues substantial evidence in the record supports the ALJ's treatment of this evidence.

The law requires the ALJ to consider and weigh all relevant evidence, including non-medical evidence from spouses, parents, other relatives, friends, and neighbors.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2001).  The ALJ must expressly consider and address the impact of testimony from lay witnesses.  Butterfield v. Astrue, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011).

The weight to which this evidence is entitled will vary according to the particular facts of the case; the source of the opinion, including qualifications; issues the opinion is about; and other factors, such as: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source

presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the plaintiff's impairment; and any other factors that tend to support or refute the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5.  Credibility determinations are the province of the ALJ and should be disturbed on review only if not supported by substantial evidence.  Kuhn v. Barnhart, No. 02-6873, 2004 WL 414069, at *13 (E.D. Pa. Mar. 3, 2004).  Indeed, the ALJ is expected to determine credibility and must do so when the evidence under review bolsters the plaintiff's credibility.  Van Horn v. Schweiker, 717 F.2d 871, 873-74 (3d Cir. 1983); Soli v. Astrue, No. 08-3483, 2010 WL 2898798, at *8 (E.D. Pa. July 22, 2010).

In this case, the ALJ assessed the credibility of two lay witnesses – Blaine Packer, who testified at the January 2001 hearing (see A.R. 1097-1100), and Virginia Greenwood, who responded to a Questionnaire in August 2001 (see id. 244-51)  Packer testified that he had known Scandone for about two years by the time of the hearing and generally spent time with her conversing, listening to music, or watching television.  They occasionally went out socially.  According to Packer, he must "constantly" remind Scandone to complete tasks, such as turning off stove burners or keeping appointments and timetables.  He also must "constantly" reiterate his statements because Scandone has difficulty understanding ordinary concepts.

Greenwood submitted a Daily Activities Questionnaire in which she indicated she is Scandone's friend and had been for approximately nineteen years at the time.  Greenwood also indicated she had become closer to Scandone over the year prior to submitting the Questionnaire.  According to Greenwood, Scandone does not require reminders for personal grooming or throughout the day, but she sometimes must repeat verbal instructions to ensure Scandone

follows through.  She also stated Scandone avoids ordinary dangers.  Greenwood's Questionnaire focuses primarily on Scandone's experiences with pain and lack of energy, and only briefly mentions Greenwood's depression.

The ALJ discounted the testimony of both witnesses for different reasons.  First, she discounted Packer's testimony because his testimony that Scandone requires constant reminders conflicts with Greenwood's assessment that she only occasionally needs reminders of verbal instructions, requires no other reminders throughout the day, and avoids ordinary dangers.  Further, the ALJ noted that Packer must have known Scandone during the time she was employed but he failed to explain how her condition changed between her working and non-working periods.  She also found that Scandone's ability to work during this period, for several years, also undermined Packer's testimony that Scandone required constant reminders.

As for the Greenwood Questionnaire, ALJ Moskal adopted the assessment of ALJ Strauss from June 2005, in which ALJ Strauss concluded Greenwood's statements regarding depression were inconsistent with Scandone's testimony and the "rest of the record."  Further, Greenwood was Scandone's friend at the time, so her responses may tend to be more favorable to Scandone's disability claims.  Finally, Scandone had the opportunity to present both Packer and Greenwood at the hearing before ALJ Moskal, but did not do so.

The Court concludes that substantial evidence supports the ALJ's assessment of the lay witness evidence.  Scandone argues it is absurd that the ALJ could find Packer's testimony not credible based on Greenwood's non-credible Questionnaire.  Had the ALJ concluded Greenwood's responses regarding reminders were not credible, this argument would carry weight.  But the ALJ did not discredit Greenwood's responses regarding reminders and ordinary

dangers.  Because one lay witness who had known Scandone for a significantly longer period of time indicated she requires almost no reminders, the ALJ rejected – as is her discretion – the testimony of another witness that Scandone requires significantly more frequent reminders. There is nothing absurd or inconsistent about this reasoning.

Scandone's Opening Brief then summarizes the ALJ's treatment of Greenwood's Questionnaire without presenting any argument as to why the ALJ erred.  (See Pl.'s Br. at 11-12.) Nevertheless, substantial evidence supports the ALJ's decision to accord little weight to Greenwood's Questionnaire.  According to the record, after Greenwood submitted her Questionnaire, Scandone attended several counseling sessions and made some progress.  (A.R. 316, 317.)  In October 2001, Dr. Eleftherios opined that her depression is mild to moderate, and that she is at least fairly able to adjust to a job.  (Id. 326-33.)  Based on this report, the ALJ concluded Scandone's depression is a severe impairment and that she could perform unskilled work requiring one or two step tasks that do not require contact with the public.  (Id. 15.) Further, there is no other credible evidence in the record supporting Scandone's claims until she returned to treatment in 2004.  (See id. 501-06; see also id. 65 (finding decision to discredit Christine Wittman opinion from September 2002 reasonable); id. 461-62.)  ALJ Moskal could reasonably conclude that, altogether, this undermines Greenwood's lay opinion that Scandone was "very depressed" in August 2001.

With regard to Scandone's alleged physical limitations, the ALJ concluded Scandone suffers from several impairments but that she is not as limited as she claims.  As discussed in more detail below, Greenwood's Questionnaire does not undermine that conclusion.

### 3.      RFC Assessment

Scandone raises three issues with the ALJ's RFC determination: (1) she failed to

adjudicate the claim <u>de novo</u> on remand[5]; (2) she failed to adequately explain her conclusions;

(3) she failed to include a limitation for urinary frequency despite finding Scandone suffered

from a severe impairment due to interstitial cystitis; and (4) she failed to include a limitation for

Scandone's reasoning level.  In response, the Commissioner argues substantial evidence supports

the ALJ's RCF assessment, Scandone's argument as to reasoning levels has no merit, and gaps in

medical care for frequent urination undermine Scandone's cystitis claim.

It is not clear whether Scandone takes issue with the ALJ's physical limitations, mental

limitations, or both.  To the extent she addresses physical limitations, Judge Brody and Judge

Welsh previously concluded that limitations to light or sedentary work are supported by

substantial evidence.  <u>See</u> <u>Scandone</u>, 2003 WL 22797732, at *3; (A.R. 53, 69).  In this case, ALJ

Moskal went even further and limited Scandone to sedentary work.  (A.R. 17.)  Because Judge

Brody and Judge Welsh previously approved less restrictive limitations, and Scandone offers no

new evidence to undermine those conclusions, this Court will not revisit the issue and concludes

---

[5]      This issue can be disposed of at the outset.  The original remands, in 2003 and 2004, narrowed the scope to five issues without disturbing other portions of the ALJ decisions. This Court remanded in 2006 to recreate the record within the scope of the earlier remands, but precluded <u>de novo</u> adjudication of the finding of a disability as of April 1, 2004.  Scandone cites no precedent in support of her argument, and other decisions in this District stand for the contrary position.  <u>See, e.g.</u>, <u>Sell v. Astrue</u>, No. 10-109, 2010 WL 5186171, at *2 (E.D. Pa. Dec. 22, 2010) (noting ALJ erred by conducting <u>de novo</u> review beyond scope of earlier remand order); <u>Butterfield</u>, 2010 WL 4027768, at *4-5 (finding ALJ has no legal obligation to consider entire matter <u>de novo</u> where district court remands on select issues).

substantial evidence supports the ALJ's decision to restrict Scandone to sedentary work.[6]

With regard to a limitation for urinary frequency, the ALJ concluded Scandone's interstitial cystitis is a severe impairment, but concluded that her impairments did not limit her ability to work during the time periods at issue to the extent she claimed.  (See id. 15, 17.)  As for the mental limitations, the ALJ recognized Scandone suffers from a severe impairment due to depression, but found she was not credible regarding the intensity, persistence, and limiting effects of her symptoms.  (Id. 15, 17.)  The ALJ reached this conclusion by relying on Scandone's work history – the ALJ concluded that Scandone's ability to work when it was necessary to do so undermines her testimony regarding the severity of her symptoms.

Once objective medical evidence shows a plaintiff has a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the plaintiff's capacity for work.  Brown v. Astrue, No. 09-1960, 2011 WL 1474295, at *9 (E.D Pa. Apr. 15, 2011) (citing 20 C.F.R. § 404.1529(c)(1)).  The ALJ considers not only the objective medical evidence, but other evidence as well, including: daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication; and other factors concerning functional limitations.  20 C.F.R. §§ 404.1529(c)(3), 416.927(d)(3).  The plaintiff's

---

[6]    Greenwood's Questionnaire, which Judge Welsh instructed the Commissioner to reconsider on remand, is consistent with the limitation to sedentary work.  (See A.R. 246.) "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

symptoms will diminish capacity for basic work activities to the extent the alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  <u>Brown</u>, 2011 WL 1474295, at *9 (citing 20 C.F.R. § 404.1529(c)(4)).

In determining the plaintiff's RFC, the ALJ is only required to include limitations credibly established by the evidence, not every limitation alleged.  <u>See</u> <u>Long v. Astrue</u>, No. 10-2828, 2011 WL 721518, at *3 (E.D. Pa. Feb. 23, 2011); <u>Dyson v. Astrue</u>, No. 09-3846, 2010 WL 2640143, at *5 (E.D. Pa. June 30, 2010).  The ALJ is permitted to discredit limitations that are medically supported but are contradicted by other evidence in the record.  <u>Dyson</u>, 2010 WL 2640143, at *5.  Although the ALJ can choose to credit portions of existing evidence, she cannot reject evidence for no reason or the wrong reason.  <u>Id.</u>  The reviewing court should ordinarily defer to the ALJ's credibility determination because she has the opportunity at the hearing to assess a witness's demeanor.  <u>Brown</u>, 2011 WL 1474295, at *9.  But when making credibility findings or findings regarding subjective complaints, the ALJ must indicate which evidence she rejects and which she relies upon as the basis for her findings.  <u>Id.</u>

In this case, the ALJ recognized that Scandone suffers from a severe impairment due to interstitial cystitis, but that does not necessarily mean she is entitled to an RFC assessment that accounts for that impairment if the ALJ concludes she has no functional limitations stemming from that impairment.  This determination considers whether Scandone's alleged limitations are credibly established, and the ALJ in this case concluded they are not.  In reaching this decision, the ALJ relied on Scandone's ability to work despite her claimed need to frequently void.  Substantial evidence in the record, in the form of Scandone's work history, supports the ALJ's

-21-

finding regarding Scandone's urinary symptoms.  Thus, there is substantial evidence to conclude this limitation was not credibly established and the ALJ did not need to include a corresponding limitation in her RFC determination.

As for Scandone's final argument regarding reasoning level, assuming an error even occurred, it was harmless in light of the VE's testimony.  Scandone argues the ALJ should have limited her to jobs with a reasoning level of one.  Even assuming the ALJ should have included such a limitation, the VE identified three jobs Scandone could perform in the national or regional economy in response to the ALJ's hypothetical, all of which share a reasoning level of one. (A.R. 626-27); see Dictionary of Occupational Titles § 713.687-018 (4th ed. 1991), available at 1991 WL 679271; id. § 739.687-182, available at 1991 WL 680217; id. § 715.687-086, available at 1991 WL 679424.  Because the ALJ would have reached the same conclusion even with this limitation – i.e., there are jobs in the economy that Scandone could perform despite her limitations – any error in failing to limit her to positions requiring only a reasoning level of one was harmless.  See Butterfield, 2011 WL 1740121, at *6-7.

Because substantial evidence supports ALJ Moskal's decision, the Court has occasion to consider whether Scandone is entitled to an award of benefits for the periods in dispute pursuant to Podedworny v. Harris, 745 F.2d 210, 222-23 (3d Cir. 1984).

**IV.    Conclusion**

For the foregoing reasons, Scandone's request for review will be **denied**.  An appropriate order will follow.

A:\05-4833 Scandone - Memo on Request for Review.wpd